IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ANDRIA N. C.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 20-1163-JWL |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security

denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)

benefits pursuant to sections 216(i), 223, 1602, and 1614 of the Social Security Act, 42

U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act).  Finding error in the

Administrative Law Judge's (ALJ) failure to explain how Plaintiff's alleged symptoms

from migraine headaches would not cause her to miss two or more days work per month

on a regular and continuing basis despite finding she has "migraines from time to time"

which "are typically resolved with medication" (R. 26), the court ORDERS that judgment

shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REVERSING the

_____

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the
interest of protecting the privacy interests of Social Security disability claimants, it has
determined to caption such opinions using only the initial of the Plaintiff's last name.

Commissioner's final decision and REMANDING this case for further proceedings consistent with this opinion.

## I.      Background

Plaintiff protectively filed applications for DIB and SSI benefits on March 15, 2017.  (R. 16).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred "by failing to provide reasons supported by substantial evidence for discounting [her] allegations of limitations due to migraine headaches."  (Pl. Br. 10) (underline omitted).

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the

evidence not only <u>supports</u> [a contrary] conclusion, but <u>compels</u> it." <u>I.N.S. v. Elias-Zacarias</u>, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting <u>Casias v. Sec'y of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991)); <u>accord</u>, <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172 (10th Cir. 2005); <u>see also</u>, <u>Bowling v. Shalala</u>, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues <u>de novo</u>, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting <u>Harrell v. Bowen</u>, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  <u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or

equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e).

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses the error alleged in Plaintiff's Social Security Brief.

## II. Plaintiff's Allegation of Migraine Symptoms

Plaintiff claims, "The ALJ's assessment of [Plaintiff]'s allegations related to migraines is flawed in that the ALJ's summary of evidence downplays her treatment of her migraines and response to that treatment." (Pl. Br. 10). She argues this demonstrates the ALJ's reasons are not supported by substantial evidence and remand is appropriate. Id. Plaintiff cites Kellams v. Berryhill, 696 F. App'x. 909, 915-916 (10th Cir. 2017) for the proposition that mischaracterizing or downplaying the severity of evidence in order

4

to support an adverse "credibility finding[2]" is error.  (Pl. Br. 11-12).  Plaintiff then summarizes the record evidence of her treatment for migraines and explains how, in her view, it supports her allegations of disabling symptoms.  (Pl. Br 12-15).  She argues the ALJ failed to explain specifically why having migraines "from time to time," as he found, is inconsistent with her testimony of two to three migraines a month causing her to miss work to stay in a dark, quiet room all day.  Id. at 15-16.  She points out her longest reported period of improvement from migraines was from her lumbar patch procedure prior to her alleged date of onset of disability.  Id. at 16.

The Commissioner argues the ALJ reasonably discounted Plaintiff's allegations and substantial record evidence supports that finding.  (Comm'r Br. 7).  He argues the ALJ found Plaintiff had migraines "from time to time" which resolved with treatment, and the record did not support the debilitating headaches alleged by Plaintiff, or her being off-task 25% of the workday or missing work four or more days a month as opined by her treating physicians..  Id. at 8.  He argues the ALJ's finding Plaintiff had migraines "from time to time" refutes Plaintiff's allegation she had two to three migraines a month.  Id. at 9.  He notes the record reveals several periods from one to six months in length where she did not seek treatment for migraines, but it does not contain any migraine diary or other contemporaneous record of the frequency of her migraines.  Id.

The Commissioner points out Plaintiff testified that a neurologist gave her a lumbar patch that helped for a year or two, and that she had been referred to a neurologist

---

[2] See footnote 3, infra, for a discussion of this term's use.

or had said she was planning to see a neurologist several time since then, but had not

followed through on the referral or on her stated plan.  Id. 11-13.  He acknowledges "that,

during the relevant time period, there were roughly an equal number of instances where

improvement was noted, as where improvement was either minimal or absent," but points

out that prior to the alleged disability Plaintiff was treated by a neurologist and after he

did a lumbar patch procedure, Plaintiff testified she was helped for a year or two.

(Comm'r Br. 14).  He argues Plaintiff did not carry her burden and where the evidence

supports both views the court may not reweigh the evidence and substitute a different

conclusion than the ALJ's.  Id. 14-15.

In her Reply Brief, Plaintiff argues the ALJ did not distinguish between her

testimony of two to three migraines a month and his finding of migraines "from time to

time."  (Reply 2).  She argues the Commissioner's suggestion the ALJ did so is merely

impermissible post hoc rationalization.  Id.  She argues the difference between Plaintiff's

testimony of two to three migraines a month and her physicians' opinions she would miss

four or more days work each month is not in conflict because the physicians "did not

indicate that the absenteeism limitations were based solely on migraines."  Id.  She then

reiterates her argument that the ALJ mischaracterized or downplayed her allegations and

thereby erred, requiring remand.  Id. 2-3.

## A.    Standard for Evaluating Allegation of Symptoms

The Tenth Circuit has explained the analysis for considering subjective allegations

regarding symptoms.  Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993)

(dealing specifically with pain).

6

A claimant's subjective allegation of pain is not sufficient in itself to establish disability.  Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain.  This court has stated:  The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488 (citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a non-exhaustive list of factors which should be considered.  Luna, 834 F.2d at 165-66; see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  These factors include:

the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).[3]

---

[3] Luna, Thompson, Kepler, and Kellams were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination."  Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R.

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon the factors stated by the court:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures the claimant has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i-vii), 416.929(c)(3)(i-vii).

### B.      The ALJ's Findings Regarding Plaintiff's Allegations of Symptoms

The ALJ stated he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and [Soc. Sec. Ruling] SSR 16-3p."  (R. 22).  As relevant to his consideration of Plaintiff's allegations of debilitating migraine headaches, he found Plaintiff "is able to attend therapy and doctor appointments, prepare meals, take care of her children, and perform household chores."  Id. 22-23.  He noted she testified of "debilitating migraine headaches that can last a couple days."  Id. at 23.  He found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent

§ 404.1529).  Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained in the regulations in effect on February 13, 2019, when this case was decided.  Nonetheless, to the extent that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, that is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

with the medical evidence and other evidence in the record for the reasons explained in

this decision." (R. 23). He explained:

> although the medical evidence documented the existence of impairments
> that could reasonably be expected to produce a certain degree of symptoms,
> the pivotal question is not whether such symptoms exist, but whether those
> symptoms occur with such frequency, duration or severity as to reduce the
> claimant's residual functional capacity or to preclude all work activity on a
> continuing and regular basis. Bearing this in mind, the undersigned finds
> that restricting the claimant to performing the range of work described [in
> the RFC assessed] above adequately addresses the location, duration,
> frequency, and intensity of the claimant's alleged symptoms as well as
> precipitating and aggravating factors.

Id.

The ALJ summarized Plaintiff's treatment history for her headaches. (R. 24, 25).

He concluded by stating his findings,

> Overall, the record shows the claimant does have migraines from time to
> time, but [they] are typically resolved with medication. … The claimant's
> complete treatment records do not document the limitations she
> subjectively alleges or otherwise establish functional limitations that would
> preclude the range of light exertion established in the residual functional
> capacity above.

Id. at 26.

The ALJ also discussed medical opinions relating to Plaintiff's migraine

headaches. Id. at 28-29. He accorded little weight to the medical opinions of the state

agency medical consultants, noting the exertional and postural limitations they opined are

not consistent with the record or supported by the evidence, but he accepted their opinion

that Plaintiff should avoid concentrated exposure to noise because that limitation "is

consistent with the claimant's reoccurring migraines." Id. at 28. The ALJ accorded some

weight to the treating source opinion of Dr. Haack, finding that the record does not

support a standing/walking limitation to two hours in a workday.  (R. 28).  He addressed

her off-task and off-work limitations and concluded:

> Dr. Haack opined the claimant would be off task 25% of the time and
> would miss work more than four days per month.  Again, the record does
> not support this level of limitation.  However, her opinion regarding the
> claimant's ability to lift and/or carry and her postural limitations is
> consistent with the record and supported by the evidence.

Id.  Finally, he explained he gave Dr. Baxa's opinion regarding physical limitations little

weight because the "limitations are wildly inconsistent with the record and Dr. Haack's

opinion."  Id. 28-29.

### C.   Analysis

Judicial review of a Social Security decision begins with the decision at issue.  If

the ALJ applied the correct legal standard, and in this case he did and Plaintiff does not

allege otherwise, the only question remaining for the court is whether substantial

evidence supports the ALJ's findings.  If it does, review is complete even if Plaintiff or

the court can point to substantial evidence supporting a contrary determination.  "The

possibility of drawing two inconsistent conclusions from the evidence does not prevent

an administrative agency's findings from being supported by substantial evidence.  [The

court] may not displace the agency's choice between two fairly conflicting views, even

though the court would justifiably have made a different choice had the matter been

before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted);

see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

Plaintiff argues the ALJ's finding she has migraines "from time to time" is

equivalent to her testimony of migraines two to three times a month.  Although the term

"from time to time" is not necessarily equivalent to two to three times a month, it could

be.  The ALJ recognized Plaintiff's allegation each migraine "can last a couple days" (R.

23) and Plaintiff's testimony of two to three migraines a month, if believed, would equate

to from two to six days a month with migraines and the ALJ did not explain how having

migraines from time to time would not be equivalent to two to six days of migraines a

month or why two to six days a month with migraines would not result in missing work

two or more days a month.  The Commissioner argues the ALJ found the frequency of

Plaintiff's migraines—from time to time—was less than two to three times a month, and

that might be the case.  But the term "from time to time" is not of so certain a meaning as

to preclude accepting Plaintiff's allegation of frequency and the ALJ neither defined his

term nor explained how he determined Plaintiff would not miss two days work a month

on a continuing basis.

     As the Commissioner argues, the ALJ noted certain facts in the record; before her

alleged onset date Plaintiff was treated by a neurologist and received help for her

migraines from that treatment for a year or two, and during the period at issue she was

referred for treatment by a neurologist and expressed a plan to see a neurologist but did

not follow through.  The Commissioner also based his argument on other record evidence

not specifically noted by the ALJ; several periods from one to six months in length where

Plaintiff did not seek treatment for migraines, and the record does not contain any

migraine diary or other contemporaneous record of the frequency of her migraines.

Moreover, he acknowledges "that, during the relevant time period, there were roughly an

equal number of instances where improvement [with medication] was noted, as where

improvement was either minimal or absent." (Comm'r Br. 14).  While the Commissioner uses these facts to argue that having migraines from time to time precludes having migraines severe enough to miss two or more days work a month on a regular and continuing base, the ALJ did not do so.  He found Plaintiff has migraines from time to time which are typically resolved with medication, but he did not find that "from time to time" is less than two or three times a month or that migraines "from time to time" would require missing less than two days work per month on a regular and continuing basis.

The ALJ having failed to make such findings, it would be post hoc rationalization for the court to weigh the evidence and make such findings, if it could.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REVERSING the Commissioner's final decision and REMANDING this case for further proceedings consistent herewith.

Dated June 2, 2021, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**